**Ronald V. DELLUMS; Eleanor Ginsberg; Myrna Cunningham; Plaintiffs,**

v.

**William French SMITH, individually and in his official capacity as Attorney General of the United States; D. Lowell Jensen, individually and in his official capacity as Assistant Attorney General, Criminal Division of The United States Department of Justice; Defendants.**

No. C–83–3228 SAW.

United States District Court, N.D. California.

Nov. 3, 1983.

Jules Lobel, University of Pittsburgh Law School, Pittsburgh, Pa., Ellen Yaroshefsky, Michael D. Ratner, Margaret L. Ratner, Sarah Wunsch, Peter Weiss, Center for Constitutional Rights, New York City, Marc Van Der Hout, National Lawyers Guild, San Francisco, Cal., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Vincent M. Garvey, David H. White, Attys., Dept. of Justice, Washington, D.C., Joseph P. Russoniello, U.S. Atty., John Barg, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM FOR JUDGMENT

WEIGEL, Senior District Judge.

### SUMMARY OF DECISION

The plaintiffs in this case are three individuals more fully identified below. The defendants are William French Smith, Attorney General of the United States and D. Lowell Jensen, Assistant Attorney General. The plaintiffs sue in this Court because one of them, Ronald V. Dellums, alleges residence within the venue of the United States District Court for the Northern District of California. Jurisdiction to decide the case vests with this Court because plaintiffs' claims are based on federal law. 28 U.S.C. § 1331. Defendants raise no question as to jurisdiction and venue.

Plaintiffs ask for an order requiring the Attorney General to conduct a preliminary investigation as to whether the President, the Secretary of State, the Secretary of Defense and other federal executive officers have violated the Neutrality Act, a federal criminal law, by supporting paramilitary operations against Nicaragua.

Plaintiff Ronald V. Dellums claims to be injured by the refusal of the Attorney General to make a preliminary investigation because it has deprived him of his constitutional right as a member of Congress to vote on the question as to whether the United States should make war on Nicaragua. Plaintiff Eleanor Ginsberg claims that the alleged paramilitary training near her home in Florida constitutes a nuisance and disrupts her enjoyment of her property. Plaintiff Myrna Cunningham complains that while serving as a doctor in Nicaragua, she was kidnapped and raped by members of paramilitary forces supported by the United States.

Plaintiffs rely upon the Ethics in Government Act, (28 U.S.C. §§ 591 *et seq.*) which declares that the Attorney General "shall conduct an investigation whenever [he] receives information sufficient to constitute grounds to investigate" that any designated federal officer has committed a violation of federal criminal law.

The plaintiffs allege that they have presented sufficient information to the Attorney General to require him to investigate whether there have been criminal violations of any or all of three Acts of Congress: the Neutrality Act (18 U.S.C. § 960) which makes it a crime to organize or launch a paramilitary expedition against a country with which the United States is not at war; an Act of Congress prohibiting conspiracy to injure property of a foreign government (18 U.S.C. § 956), and another Act of Congress prohibiting unlicensed shipment of firearms (18 U.S.C. § 922).

Plaintiffs focus on alleged violations of the Neutrality Act, 18 U.S.C. § 960, which declares that:

Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined not more than $3,000 or imprisoned not more than three years, or both.

The Attorney General does not deny that on January 27, 1983, he received from plaintiffs in writing the following information:

That in November 1981, at the request of President Reagan and other persons in his administration, the CIA presented a plan covertly to aid, fund and participate in a military expedition and enterprise utilizing Nicaraguan exiles for the purpose of attacking and overthrowing the government of Nicaragua;

That the plan was reviewed and approved in November 1981 by various members of the National Security Council, including, but not limited to Ronald Reagan, William Casey, Alexander Haig, Jr., Thomas Enders [Assistant Secretary of State], Caspar Weinberger and Nestor Sanchez [Assistant Secretary of Defense];

That the plan was and is being implemented and includes:

(1) providing at least $19 million to finance covert paramilitary operations against the people and property of Nicaragua;

(2) financing the training of invasionary forces in the United States and Honduras, including former Somoza National Guardsmen, various terrorist groups and others;

(3) conducting intelligence activities by the CIA to determine the specific targets for such anti-Nicaraguan terrorist forces;

(4) using Honduras as a base for invasionary forces;

(5) supporting organizations of Nicaraguan and Cuban exiles based in the United States which, in turn, train and support invasionary forces on United States soil; and

(6) sending hundreds of CIA officers and agents and other U.S. government agents to Honduras and Costa Rica to participate and assist in covert military operations against the people and government of Nicaragua;

Plaintiffs claim that the Attorney General's receipt of the foregoing information triggered his duty, under the Ethics in Government Act, to conduct a preliminary investigation. The Attorney General refused to conduct any investigation, stating that the material provided "does not constitute specific information of a federal offense 'sufficient to constitute grounds to investigate.'" Plaintiffs then brought this action to compel the Attorney General to perform his statutory duty and have filed a motion for summary judgment. Defendants have filed a cross-motion to dismiss the complaint.

In several previous cases, courts have declined to allow private persons to bring a direct challenge to the legality of Administration actions in Latin America under the Neutrality Act. They refrained from deciding these cases on two principal grounds, namely, (1) that it is extremely difficult or impossible for a court to discover exactly what is happening in foreign countries such as Nicaragua and (2) that the precise ex-

tent to which the Neutrality Act limits the power of the President to conduct foreign policy is best determined through political avenues available to Congress and the President.

This case is different.

Plaintiffs do not ask the Court to declare illegal any action by the President or his subordinates. They ask only that the Attorney General be required to make an investigation called for by the Ethics in Government Act. That statute unambiguously directs the Attorney General to conduct a preliminary investigation for a period not to exceed ninety days upon receiving specific information from a credible source that a federal criminal law has been violated by designated federal executives. The Ethics in Government Act goes on to provide that the Attorney General must call for appointment of independent counsel if the Attorney General finds reasonable grounds to believe that further investigation or prosecution is warranted or if ninety days elapse from receipt of the information without his determination that there are no reasonable grounds to believe that further investigation or prosecution is warranted.

The Attorney General does not seriously dispute that the information submitted by plaintiffs on January 27, 1983 is sufficiently specific, nor does he present any reason to suggest plaintiffs are not credible sources.

The Attorney General argues that the Court should not hear the case because plaintiffs as private persons have no right to sue to enforce the Ethics in Government Act. The Court, after careful consideration, concludes otherwise. The Attorney General's other principal argument is that this case calls for decision on a political question and is therefore not justiciable. The argument is invalid. The beginning and end of plaintiffs' demand is to require no more than that the Attorney General carry out the mandate of Congress to investigate when presented with specific information from credible sources that named federal government officials have violated criminal law.

If, as the Attorney General suggests, a court cannot order him to conduct an investigation upon the request of a credible person or persons supplying specific information, then the Ethics in Government Act is rendered meaningless and its salutary purposes are defeated. Those purposes are manifest from the clear provisions of the statute itself, as well as from the relevant legislative history and Congressional Record.

■ One such purpose is to deny the Attorney General the power to refuse to make at least a preliminary investigation upon receipt of reasonably specific information from credible sources of violation of federal criminal law by members of the same branch of the government he serves. Another of the statute's purposes is to provide, in proper cases, for prosecution by independent counsel free from conflict of interest by virtue of ties to the executive. Yet another purpose is to ensure that no one, however high or important a position he holds in the executive branch, is insulated from the investigation called for by the provisions of the Ethics in Government Act. Finally, the underlying purpose—perhaps the most salient of all—is to help ensure that neither Congress nor the public shall be denied the facts when substantial claims of violation of federal law implicate high federal officials.

This underlying purpose would appear to be particularly well served in cases such as this involving claims of unlawful covert action. If the Attorney General complies with the Ethics in Government Act, the requisite information will be subject to review by an independent arm of the government—a special federal court provided for by the statute. If the Attorney General refuses to comply with the statute, the holding in this case provides a federal court remedy to compel compliance with the statute. In this way, improper secrecy or neglect by an arm of the executive branch can be prevented. The Congress, the public and the press will be appropriately informed.

It should be perfectly clear—indeed, it is emphasized—that the Court passes no judgment as to whether or not any federal official has violated any federal criminal law. It is the duty of the Attorney General to investigate into that question.

For reasons further elaborated below, plaintiffs' motion to require the Attorney General to make that investigation will be granted.

## CONCERNING JUSTICIABILITY

Defendants claim that the case must be dismissed because it is not justiciable. This claim and the supporting arguments are paramount. Therefore they receive the Court's first attention.

Defendants contend that the matter is nonjusticiable for three reasons. First, they argue, the plaintiffs lack standing to maintain the suit. Second, they contend that resolution of the case would involve answering a "political question" that courts should refrain from deciding. Third, they say the case is outside the competence of a federal court because it calls for an advisory opinion.

### Plaintiffs have standing to sue.

■ Although "[g]eneralizations about standing to sue are largely worthless as such," *Data Processing Service v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), the relevant decisions provide a series of inquiries from which an analysis of standing may proceed. To establish standing, a plaintiff must show: (1) that "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant;" (2) that "the injury 'fairly can be traced to the challenged action;'" and (3) that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d

700 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979) and *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d (1976)). In addition, when a plaintiff seeks review of agency action claiming injury to some interest, the interest sought to be protected must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *See Data Processing Service*, 397 U.S. at 153–54, 90 S.Ct. at 829–30. The Court concludes that the plaintiffs in this case have standing because they meet all of these requirements.

### Plaintiffs allege injury sufficient for standing.

There can be no doubt that plaintiffs have been injured by the refusal of the Attorney General to conduct a preliminary investigation.[1]

■ The Ethics in Government Act requires the Attorney General to investigate whenever specific information describing a crime is received from a credible person, thereby vesting in that person a procedural right to have the allegations investigated. Plaintiffs share that right with all members of the public to aid in ensuring that violations of criminal law are not ignored because the persons accused are Administration officials. The denial of that right constitutes an injury which is legally cognizable.

■ Defendants contend that the alleged injury—the refusal of the Attorney General to conduct an investigation—does not implicate an interest sufficient to confer standing on plaintiffs. Whether an alleged injury implicates an interest cognizable for standing purposes in this case de-

---

1. Plaintiffs also contend that they have standing because they have been harmed by the underlying criminal acts they have alleged. These injuries are particularized, but they cannot confer standing on plaintiffs to bring this lawsuit. The required nexus between plaintiffs' status and the claim sought to be adjudicated, as well as the

Court's ability to redress the harm in this action, are absent. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 618–19, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). The likelihood that an injunction would lead to actions curtailing future harm to plaintiffs is no less speculative than in *Linda R.S. Cf. id.*

pends upon the provisions of the Ethics in Government Act and the intent of Congress in enacting it. If Congress thereby created a legal right to a preliminary investigation for persons supplying the required information, then the requisite interest for standing is found in the invasion of that right.[2] *See Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 224 n. 14, 94 S.Ct. 2925, 2933 n. 14, 41 L.Ed.2d 706 (1974). Thus, the critical question is whether the Ethics in Government Act confers any procedural rights upon persons who have supplied the Attorney General with appropriate information.[3]

The only case directly to address this issue is *Nathan v. Attorney General,* 557 F.Supp. 1186 (D.D.C.1983), in which the court found that the Ethics in Government Act created such a procedural right. Judge Gesell there inferred the existence of this right from the structure and purpose of the statute. He reasoned that:

> [i]f not plaintiffs, who can be said to have a cause of action to insist that the Act be carried out in accordance with its terms? The Special Division of the Court responsible for appointing Special Prosecutors, to which this matter was initially presented, has ruled it has no jurisdiction.... Nor does Congress have any special enforcement power; under the Act members of the Judiciary Committees of the House or Senate can only request appointment of a Special Prosecutor, and, in any event, if an Attorney General ignores his duty to investigate and report to Congress, Congress remains uninformed and cannot act. Thus if the Act is enforceable at all it must be through those, like plaintiffs here, who have supplied specific informa-

tion and pursue their application for an investigation in the District Court. *Id.* at 1189.

The conclusion in *Nathan* concerning the intent of Congress is supported by cases assessing the standing of citizen plaintiffs to bring suit pursuant to an analogous statute, section 102(2)(C) of the National Environmental Protection Act (NEPA), 42 U.S.C. § 4332(2)(C). That statute requires federal agencies contemplating action which may significantly affect the quality of the environment" to prepare a detailed environmental impact statement (EIS). The federal agency must also make copies of the EIS, accompanied by "the comments and views of the appropriate Federal, State, and local agencies," available to the President, the Council on Environmental Quality and the public. *Id.*

In *City of Davis v. Coleman,* 521 F.2d 661, 672 (9th Cir.1975), the Ninth Circuit held that this provision gave the City of Davis as "a local agency" the "right to comment on any EIS ... and to have its comments considered" with the EIS if an EIS was required by NEPA. The court ruled that the deprivation of the city's opportunity to present information and comments to the federal agency constituted an injury sufficient to support standing to challenge the agency's decision that an EIS ·was not required under the circumstances of that case. *Id.* The court found standing without reference to any explicit language in the statute or its legislative history, i.e., simply by virtue of the statutory scheme which envisioned comments by local agencies.

The Ethics in Government Act similarly envisions that information supplied by persons pursuant to its provisions will be for-

---

**2.** The injury need not be to an economic interest. *Data Processing Service v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *see, e.g., Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972); *Benton Franklin Riverfront Trailway v. Lewis,* 701 F.2d 784, 787 (9th Cir.1983).

**3.** Defendants' reliance on *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), as supporting a negative answer is misplaced. Plain-

tiffs "ask only that the court review the government's own enforcement effort against the standards established by the [statutory scheme] ... The reluctance of courts to imply separate private enforcement rights from statutes or regulations which provide explicitly for government enforcement procedures and penalties, [citing *Cort v. Ash* ], is not applicable to such a private proceeding as this." *Legal Aid Soc. of Alameda Co. v. Brennan,* 608 F.2d 1319, 1332 (9th Cir. 1979).

warded and considered by appropriate decisionmakers named in the statute. Such consideration is required whenever the Attorney General must conduct a preliminary investigation. Under NEPA, consideration is required when the federal agency must file an EIS. In the case at bar as in *City of Davis*, plaintiffs have standing because Congress conferred upon them a right to a judicial determination.

That Congress in fact intended the information submitted by private plaintiffs to be considered when it meets the statutory requirements is shown by the careful structure of the Ethics in Government Act. The Act requires the Attorney General to conduct a preliminary investigation upon receiving information that a covered federal official has committed a covered violation of law, unless the information is not sufficiently specific or the source is not sufficiently credible. 28 U.S.C. § 592(a)(1). Once the Attorney General conducts a preliminary investigation he must either request appointment of a special prosecutor or notify a special court[4] created by the Act that no further investigation or prosecution is warranted.[5] In the latter case, the Attorney General must file with the special court a "memorandum containing a summary of the information received [from the complainant] and a summary of the results of any preliminary investigation."[6] 28 U.S.C. § 592(b)(2).

Whether or not further investigation is recommended, the special court has power to make the Attorney General's memorandum or summary public "if it decides at the appropriate time that it would be proper and useful to do so." S.Rep. No. 170, 95th Cong., 1st Sess. 56, *reprinted in* 1978 U.S. Code Cong. & Ad.News 4216, 4272. This power to make the complainant's information public plainly includes the power to convey the information to Congressional committees with oversight duties under the Ethics in Government Act.

---

**4.** This special court is created by 28 U.S.C. § 49, enacted as Pub.L. No. 95–521, § 602(a), 92 Stat. 1873 (1978). The court is denominated a division of the United States Court of Appeals for the District of Columbia. Its members are appointed to two year terms by the Chief Justice; one must be a judge of the D.C. Circuit Court of Appeals; the two others are to be selected by the Chief Justice from among the active and retired justices of the Supreme Court and the active and senior judges of the United States Circuif Courts.

**5.** Under 28 U.S.C. § 592(c), the Attorney General *must* apply to the special division of the court for the appointment of an independent counsel "if ninety days elapse without a determination by the Attorney General that there are no reasonable grounds to believe that further investigation or prosecution is warranted." This requirement is imposed by the statute to prevent investigations concerning allegations of wrongdoing from being stalled by total inaction within the Justice Department. *See* S.Rep. No. 170, 95th Cong., 1st Sess. 54, *reprinted in* 1978 U.S. Code Cong. & Ad.News 4216, 4270. The "determination" required by subsection 592(c) can be reached in one of two ways. First, the Attorney General can conclude that the information he has been presented is insufficiently specific or that the source is insufficiently credible to warrant a preliminary investigation pursuant to subsection 592(a)(1). Second, he may conclude that a preliminary investigation is warranted, but that after conducting an investigation, no

reasonable grounds exist to believe that further investigation or prosecution is warranted. *See* 28 U.S.C. § 592(b)(1). In the latter event the Attorney General must notify the special division of the court and submit a memorandum to that court with a summary of the information presented. *Id.; id.* § 592(b)(2). In this case, the Attorney General without conducting any preliminary investigation made the "determination" required by subsection 592(c)(1) in the form of a letter to plaintiffs stating without elaboration that he did not consider the information presented sufficient grounds to investigate. He made no report to the court. His determination was thus necessarily of the first type described above. It can be sustained only if the Attorney General was correct in his conclusion that subsection 592(a)(1) does not require an investigation upon the presentation of plaintiffs' information.

**6.** "The term 'summary' was used in this paragraph so that the Attorney General would not have to file with the court all of the investigative files or the total work product of the Federal Bureau of Investigation or the Department of Justice attorneys." S.Rep. No. 95–170, 95th Cong., 1st Sess. 55 (1977), 1978 U.S.Code Cong. & Ad.News at 4271. However, it was anticipated that even in the case of a "crank letter", the memorandum to the court would include a copy of the letter. *Id.*

Merely because plaintiffs could approach Congress and the public directly does not detract from the importance of their statutory rights under the Ethics in Government Act. The ability to communicate outside the statutory framework was equally present in *City of Davis*. In that case, the court implicitly acknowledged the importance of a right to have information considered within a statutory procedural framework. *See* 521 F.2d at 672. Unsolicited offerings outside such a framework lack commensurate status and weight.

The principal purpose of the framework created by the Ethics in Government Act is to avoid both actual and perceived conflicts of interest for Justice Department officials confronted with allegations of wrongdoing by Administration officials. *See* S.Rep. No. 170, 95th Cong., 1st Sess. 5–6 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News at 4221–22. In furtherance of this objective, Congress intended that "as soon as there is any indication whatsoever that the allegations involving a high level official may be serious or *have any potential chance of substantiation,* a special prosecutor should be appointed to take over the investigation." *Id.* at 54 U.S.Code Cong. & Admin.News 1978, p. 4270 (emphasis added). A clear working assumption of Congress was that the Attorney General can be required to recuse himself under certain circumstances, and that he can be forced to consider whether those circumstances exist. As stated in *Nathan,*

> [t]he Act creates procedural rights, and these must be redressed or the entire statutory scheme, designed to focus attention on claims of criminal misconduct in high places, is meaningless. To hold otherwise would be to declare that the Ethics in Government Act is merely a

pious statement of pure political import designed to assuage the public's concern for abuses of trust that followed Watergate. This the Court will not do.

557 F.Supp. at 1190.

The fact that if plaintiffs have no standing to sue, no one would have standing, is not by itself a reason to find standing. *Schlesinger v. Reservists,* 418 U.S. at 227, 94 S.Ct. at 2935. The Court also recognizes that "[o]ur system of government leaves many crucial decisions to the political processes." *Id.* But these principles cannot be permitted artificially to limit the Court's inquiry into the legislative intent and operation of a statutory scheme. In order to preserve confidence in governmental accountability, Congress, by enacting the Ethics in Government Act, and the President, by signing it, removed certain actions and determinations from the oft-hidden realm of the "political process" and required the creation of a record subject to public and congressional scrutiny.

This Court will not declare that effort a nullity and accordingly concludes that the plaintiffs have alleged sufficient injury to maintain this action.[7]

*Plaintiffs' injury will be redressed by the relief they seek.*

In addition to a legally recognized injury caused by defendants, standing requires that the court be able to provide plaintiffs with redress in the event of a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. at 38, 96 S.Ct. at 1924. Thus, standing is proper in this case only if the Court may, upon the appropriate findings, order the Attorney General to conduct a preliminary investigation. The Court may grant this relief if (1) the decision not to conduct a preliminary

---

**7.** The same considerations prompting the conclusion that plaintiffs have alleged injury to a legal interest created by statute also show that plaintiffs' claims fall within the "zone of interests" protected by the statute. The zone of interests test serves the purpose of "allowing courts to define those instances where it believes the exercise of its power at the instigation of a particular party is not congruent with the mandate of a legislative branch in a particular subject area." *Control Data Corp. v. Baldridge,* 655

F.2d 283, 297 (D.C.Cir.1981) (quoting *Tax Analysts & Advocates v. Blumenthal,* 566 F.2d 130, 140 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978)). The Court has already determined that the institution of an action by persons who supply information *is* congruent with Congress's intent in enacting the Ethics in Government Act. Plaintiffs therefore meet the "zone of interests" test. *See City of Davis,* 521 F.2d at 672.

investigation is subject to judicial review and (2) if the remedy of mandamus to the Attorney General is permitted. In this case, both conditions are satisfied.

*The Court may review the Attorney General's refusal.*

■ Since the Attorney General's decision not to conduct a preliminary investigation injured plaintiffs' legal interests, the Attorney General's decision is subject to judicial review. That decision falls within the purview of the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706. Section 702 of the APA provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The Attorney General is an "agency" subject to review jurisdiction under the APA. *See Proietti v. Levi*, 530 F.2d 836, 838 (9th Cir.1976). "Agency action" includes a failure to act. 5 U.S.C. § 551(13); *See City of Chicago v. United States*, 396 U.S. 162, 166–67, 90 S.Ct. 309, 311–12, 24 L.Ed.2d 340 (1969).

The APA authorizes judicial review of federal agency action unless (1) such review is expressly precluded by statute, or (2) the agency action is "committed to agency discretion." 5 U.S.C. § 701(a)(1), (2). The APA incorporates a strong presumption of the right to judicial review unless there is clear and convincing evidence that Congress intended to foreclose review. *See Standard Oil Co. of California v. F.T.C.*, 596 F.2d 1381, 1384 (9th Cir.1979).

■ The Court's analysis of plaintiffs' rights under the Ethics in Government Act compels the conclusion that no relevant statute precludes judicial review of the Attorney General's determination that he has not been presented information requiring him to conduct a preliminary investigation. The remaining question is whether the Attorney General's determination lies entirely within his discretion. *See Standard Oil*, 596 F.2d at 1385.

The APA's exception for actions committed to agency discretion applies "in those rare instances where 'statutes are drawn in such broad terms that there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)); *Standard Oil*, 596 F.2d at 1385. In this case, where Congress has supplied specific standards to govern the Attorney General's determination, there is "law to be applied."

The Ethics in Government Act requires the Attorney General to conduct a preliminary investigation "whenever [he] receives information sufficient to constitute grounds to investigate that any of the [specified officials] has committed a [nonpetty federal offense]." 28 U.S.C. § 591(a). The statute as originally enacted in 1978 permitted the Attorney General to consider *only* the specificity of the information in determining whether "grounds to investigate" existed. Pub.L. No. 95–521, § 601(a), 92 Stat. 1867, 1868 (1978). The Senate Report explained that

[the Act] directs the Attorney General to conduct an investigation ... whenever the Attorney General receives specific information that any of the [specified officials] may have violated any federal law other than a petty offense. The term 'specific information' is used so that the provisions of this chapter will not apply to a generalized allegation of wrongdoing which contains no specific factual support. U.S.Code Cong. & Admin.News 1978, p. 4267.

In 1983, the Ethics in Government Act was amended to redefine what constitutes "grounds to investigate" as information that is both specific and derived from a credible source. Pub.L. No. 97–409, § 2(a)(1), 96 Stat. 2039, 2040 (1983) (to be codified at 28 U.S.C. § 592(a)(1)(A) & (B)). The legislative history to these amendments made clear that the announced criteria of specificity and credibility are the only ones to be applied in determining whether a preliminary investigation is required. *See* S.Rep. No. 496, 97th Cong., 2d Sess. 11–12, *reprinted in* 1982 U.S.Code Cong. & Ad. News 3537, 3547–48, 3557.

■ The Attorney General is thus called upon to perform an essentially ministerial task, i.e., that of determining whether he has been supplied specific information from a credible source that a high-ranking official may have committed a crime. This is not the sort of unlimited discretion precluding review under the APA. The legislative history gives sufficient guidance concerning the intended content of the terms "specific" and "credible" to provide the Court with the necessary "standard by which to measure the lawfulness of agency action." *See Standard Oil,* 596 F.2d at 1385. "Courts are as expert as administrators in matters of statutory construction." *East Oakland-Fruitvale Planning Council v. Rumsfeld,* 471 F.2d 524, 529 (9th Cir.1972). Section 592(a)(1) "does not permit the Attorney General to adopt a definition of 'specific information' [or credible source] different from the standard originally set by Congress." *Nathan,* 557 F.Supp. at 1189 n. 4. The decision whether to conduct a preliminary investigation is not, therefore, committed to agency discretion.[8]

### Mandamus is a proper remedy.

Defendants contend that an order of mandamus here would result in undue judicial interference with the prosecutorial discretion of the Attorney General and contravenes the separation of powers doctrine. Defendants' argument proceeds on two erroneous assumptions: first, that the Ethics in Government Act does not prescribe any mandatory duties, and second, that going forward with a preliminary investigation is indistinguishable from the decision to prosecute.

Once the Attorney General has received the requisite information, he must conduct a preliminary investigation. The statute states that the Attorney General "shall" conduct a preliminary investigation upon the receipt of the information, not that he "may" do so. 28 U.S.C. § 592(a)(1). The legislative history presents hypothetical examples of the statute's operation which lead to the same conclusion. *See e.g.,* S.Rep. No. 170, at 55, 1978 U.S.Code Cong. & Ad.News at 4271; S.Rep. No. 496 at 12, 1982 U.S.Code Cong. & Ad.News at 3548. Examples of the actual operation under the Ethics in Government Act show that the previous administration recognized a mandatory duty to conduct a preliminary investigation when presented with sufficiently specific allegations. *See Special Prosecutor Provisions of the Ethics in Government Act: Hearings Before the Senate Committee on Government Affairs,* 97th Cong., 1st Sess. 253–55 (1981); *see also id.* at 359 (hearsay that Hamilton Jordan used cocaine sufficient to trigger preliminary investigation).

■ The legislative history repeatedly uses the terms "must" or "required" with respect to the Attorney General's obligation to conduct a preliminary investigation. *See, e.g., id.* at 117 (Statement of Ass't Attorney General R. Guiliani); *id.* at 219 (Statement of Fred Wertheimer, President of Common Cause); *id.* at 236 & 241 (Letter of Ass't Attorney General Michael Dolan); S.Reps. Nos. 170 and 496, *passim.* As discussed above, determination that specific information has been received from a credible source is not left to the Attorney General's unfettered discretion. Consequently, the Court rejects defendants' contention that the Ethics in Government Act imposes no mandatory duty to conduct a preliminary investigation.

Defendants' argument that the duty to conduct a preliminary investigation is indistinguishable from his discretionary power to prosecute is equally without merit. The two are distinct steps in the statutory procedures. Defendants' discretion to decide whether or not to prosecute is left intact. This issue was addressed by the court in *Nathan:*

---

8. Even if other aspects of the Attorney General's duties under the Ethics in Government Act, such as the form that the preliminary investigation takes, may be committed to his discretion, the question whether to conduct an investigation is reviewable because it is *not so committed.* Under the APA, "separable issues appropriate for judicial determination are to be reviewed, though other aspects of the agency action may be committed to the agency's expertise and discretion." *East Oakland-Fruitvale Planning Council v. Rumsfeld,* 471 F.2d at 533.

The Attorney General is concerned that the Act may intrude unduly upon his office by forcing appointment of a Special Prosecutor to take over his constitutional functions. In this regard, however, he misinterprets the effect of the Act. Where specific information is provided, the Act requires only preliminary investigation; it does not oblige the Attorney General to seek an outside prosecutor.

557 F.Supp. at 1189–90 (footnote omitted).

In contending that the Court lacks power to order the Attorney General to conduct a preliminary investigation, defendants rely upon *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379–82 (2d Cir.1973), and *Moses v. Kennedy,* 219 F.Supp. 762, 765–66 (D.D.C.1963). These cases do consider the power of courts to compel prosecution, but they are not controlling here. Under the Ethics in Government Act, Congress (1) segregated the preliminary investigation from the prosecution, strictly limiting its function and distinguishing it from a normal investigation supporting a prosecution,[9] and (2) clearly made conduct of a preliminary investigation mandatory under the circumstances alleged to exist in this case. In *Inmates of Attica,* the court found in the governing statute no "intent by Congress to depart so significantly from the normal exercise of executive discretion." 477 F.2d at 381.

▬ Assuming arguendo that a preliminary investigation would normally be viewed as an exercise of prosecutorial discretion despite its limited scope and purpose, Congress clearly intended departure from the normal rule of executive discre-

tion in the Ethics in Government Act by making a preliminary investigation mandatory. In *Wren v. Merit Systems Protection Board,* 681 F.2d 867, 875 n. 9 (D.C.Cir. 1982), the court strongly suggested that such an investigation may be ordered despite the general rule that courts will not interfere with "prosecutorial" decisions. The Court cannot agree with defendants that an order compelling the preliminary investigation required by the statute would unduly intrude upon the domain of the Executive. Consequently, the mandamus remedy sought by plaintiffs may be ordered by this Court. *See, e.g., Nathan v. Attorney General,* 563 F.Supp. 815, 816–17 (D.D.C.1983).

▬ Where federal officials have acted outside statutory authority, injunctive relief against them is appropriate. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 701–02, 69 S.Ct. 1457, 1467–68, 93 L.Ed. 1628 (1949). Moreover, the APA specifically authorizes the Court to compel agency action found to be unlawfully withheld. 5 U.S.C. § 706(1); *Guerrero v. Garza,* 418 F.Supp. 182, 190 (W.D. Wis.1976); *NRDC v. Morton,* 388 F.Supp. 829, 834 n. 7 (D.D.C.1974), *aff'd mem.,* 527 F.2d 1386 (D.C.Cir.), *cert. denied,* 427 U.S. 913, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976). When, as here, the thrust of a statutory command addressed to a public official is unmistakable, his duty to comply with it is "ministerial." *Elmo Division of Drive-X Co. v. Dixon,* 348 F.2d 342, 346 (D.C.Cir. 1965). When the claim of a plaintiff is clear and certain and the duty of an officer is ministerial, mandamus is traditionally a proper remedy. *Elliott v. Weinberger,* 564 F.2d 1219, 1226 (9th Cir.1977), *rev'd in*

---

9. *See, e.g.,* S.Rep. No. 170 at 54–55, 1978 U.S. Code Cong. & Ad.News at 4270 ("The purpose of ... a preliminary investigation is to allow an opportunity for frivolous or totally groundless allegations to be weeded out.... [T]he Attorney General is not authorized to conduct whatever investigation [he] can fit into [the statutory] period. The Attorney General does not have the authority to conduct a full investigation ... during the period provided for a preliminary investigation ..."). The Ethics in Government Act prohibits the Attorney General from convening grand juries, plea bargaining, granting im-

munity or issuing subpoenas in connection with a preliminary investigation. 28 U.S.C. § 592(a)(2). This prohibition was made express by the 1983 amendments "in order to ensure that the Attorney General does not conduct a full-blown investigation," because "[o]pening the door to the use of these powers [would present] the potential for circumvention of the Act by allowing the Attorney General to make *prosecutive decisions which should be left to a special prosecutor."* S.Rep. No. 496 at 13–14, 1982 U.S.Code Cong. & Ad.News at 3549–50 (emphasis added).

*part on other grounds,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

Once the Court interprets the law, the Attorney General's duty will be clear; the Court is not telling him *how* to exercise his discretion. *See id.* (quoting *Knuckles v. Weinberger,* 511 F.2d 1221, 1222 (9th Cir. 1975)). The order plaintiffs seek will not mandate the manner in which the Attorney General must conduct his investigation, but only that a preliminary investigation must be conducted. For these reasons, defendants' contention that the Ethics in Government Act imposes no mandatory duties and that mandamus is therefore impermissible must be rejected.

Because plaintiffs' claims as framed in this action meet all of the requirements listed by the Supreme Court in *Valley Forge,* they have standing to maintain it.

*This case does not present a nonjusticiable political question.*

■■■ The defendants also maintain that this case should not be decided because it presents a "political question." According to defendants, "this Court is being asked to render an opinion on, and thus to inject itself into, foreign policy issues which are essentially non-justiciable." Defendants also suggest that the question whether the Neutrality Act applies to the President's official acts is "political" in nature and should be left to the "political branches" of the federal government for decision.

The precise outlines of the political question doctrine remain nebulous. The doctrine consists of the reluctance of courts to adjudicate certain types of issues because of respect for the separation of powers. The Supreme Court identified these categories of issues in *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962):

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

In several recent cases, courts have declined on political question grounds to adjudicate suits challenging Administration actions in Latin America. In *Crockett v. Reagan,* 558 F.Supp. 893 (D.D.C.1982), 29 members of Congress brought an action against the President, seeking a declaration that military aid supplied to the government of El Salvador violated the War Powers Resolution, 50 U.S.C. §§ 1541–1548, and other federal statutes. *Id.* at 895. The court ruled that the factfinding necessary to resolve the statutory issue was beyond its competence, and rendered the case nonjusticiable. *Id.* at 893. In *Sanchez-Espinoza v. Reagan,* 568 F.Supp. 596 (D.D.C.1983), the plaintiffs included the individuals who are plaintiffs in the present action. They sought damages, injunctive relief and a declaration that the defendants, including the President, had violated the Neutrality Act, 18 U.S.C. § 960, the War Powers Resolution and other statutes by financing and supporting paramilitary activities designed to overthrow the government of Nicaragua, a nation with which the United States is not at war. *Id.* at 598. The court ruled that action nonjusticiable because of (1) the absence of judicially manageable standards for resolving the dispute, (2) the impossibility of resolving the dispute without disagreeing with either Congress or the President concerning the merits of the controversy, and (3) the danger of embarrassment to the federal government from multifarious pronouncements by different branches on the same question. *Id.* at 600. Defendants err in claiming that the same considerations make this case inappropriate for judicial decision.

The Supreme Court has declared that the political question doctrine must be the sub-

ject of case-by-case inquiry. *Baker v. Carr*, 369 U.S. at 211, 82 S.Ct. at 706. That the subject matter of the allegations involved in the present case somewhat resembles that of *Crockett* and *Sanchez-Espinoza* does not, therefore, determine the justiciability of this action. Rather, the Court must consider the precise facts and posture of the particular issues in this case. *See id.* at 217, 82 S.Ct. at 710. Comparison of this case with *Crockett* and *Sanchez-Espinoza*, in the light of factors discussed in *Baker v. Carr*, shows this case does not contain the same elements of political question that compelled those decisions.

Unlike the complaints in *Crockett* and *Sanchez-Espinoza*, the complaint in the case at bar does not directly challenge the legality of any action taken by the President. Plaintiffs seek only to compel good faith performance of a statutory duty. Such relief is unquestionably within judicial competence. The case before this Court does not require any assessment by the Court as to the accuracy of the data reported by plaintiffs to the Attorney General. The sole issue is whether the report is sufficient to trigger the preliminary investigation plaintiffs contend is required by the Ethics in Government Act.[10] The limited task requested of the Court is thus judicially manageable, unlike those requested in *Crockett* and *Sanchez-Espinoza*. Should plaintiffs prevail, the Attorney General, not the Court, will investigate the allegations and then determine whether any prosecution is warranted as a matter of fact and law. There is consequently no danger of "multifarious pronouncements" such as the court feared in *Sanchez-Espinoza*. All subtleties of factfinding concerning events in Latin America will be left with the political branches, which are better equipped to perform those functions. *Cf. Sanchez-Espinoza*, 568 F.Supp. at 600, 602; *Crockett*, 558 F.Supp. at 898–99.

Defendants also argue that the case is not justiciable because it touches a question of the propriety of the President's foreign policy. Certainly, courts must hesitate before entertaining questions of the President's authority in the conduct of foreign relations. *See Goldwater v. Carter*, 444 U.S. 996, 1002, 100 S.Ct. 533, 536, 62 L.Ed.2d 428 (1979) (Rehnquist, J., concurring in judgment). But not every case involving foreign relations lies beyond judicial cognizance. *Baker v. Carr*, 369 U.S. at 211, 82 S.Ct. at 706. The issue of justiciability must in such cases be resolved by

a discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in light of its nature and posture in the specific case, and of the possible consequences of judicial action.

*Id.* at 211–12, 82 S.Ct. at 706–07.

The last two of these criteria have already been examined and found to present no obstacle to justiciability here. The issue presented, in its present posture, is well-suited for judicial resolution. The Court will not be required to interfere with the Executive's conduct of foreign relations. Nor is the Court asked to declare any Presidential action illegal.[11]

---

**10.** Defendants concede that "the truth *vel non* of these allegations is not the issue in this action but rather whether these allegations are sufficient to require the Attorney General to institute a preliminary investigation under the Ethics in Government Act." Defendants' Response To Plaintiffs' Statement Of Material Facts Not In Dispute, p. 2, ¶ 3.

**11.** To require a preliminary investigation, the Court must determine that the Executive actions alleged by plaintiffs, if true, *may* violate federal law. It could be argued that this subsidiary ruling itself involves a political question. The President and Congress might differ from the Court in construction of federal laws governing the legality of the alleged activities. But the specter of varying interpretations, standing alone, does not negate the obligation of this Court to decide a bona fide controversy, properly presented, even though the controversy has political overtones. *See INS v. Chadha,* — U.S. —, 103 S.Ct. 2764, 2780, 77 L.Ed.2d 317 (1983). Court rulings on purely legal questions, not entailing any finding of illegality, cannot be precluded simply because other branches might adopt a different position on the same legal question. *Cf. Goldwater v. Carter,* 444 U.S. 996, 1000, 100 S.Ct. 533, 535, 62 L.Ed.2d 428 (Powell, J., concurring in judgment) (purely legal inquiry presents no political question because it

The other criterion—the history of the question's management by the political branches—yields little guidance because the Ethics in Government Act is recent legislation. As shown above, the statute envisions judicial enforcement of its requirements. It follows that neither Congress nor the President intended to reserve for decision in the political arena questions of whether the Attorney General must conduct a preliminary investigation when supplied information concerning alleged official wrongdoing.

In sum, none of the analytical threads that describe the political question doctrine catches this case. *See Baker v. Carr,* 369 U.S. at 211, 82 S.Ct. at 706. The case is justiciable. *See id.* at 217, 82 S.Ct. at 710.

*This case does not call for an "advisory opinion".*

▮▮▮▮▮ Finally, defendants contend that the case is not justiciable because it requires the Court to render an opinion on the question whether the President can violate the Neutrality Act. This opinion, defendants argue, would be an "advisory opinion" beyond the power of a federal court to render. The argument does not merit extended discussion. A court is called upon for an advisory opinion if presented with a case that is unripe, *see United Public Workers v. Mitchell,* 330 U.S. 75, 89–90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947), moot, *see United States Parole Commission v. Geraghty,* 445 U.S. 388, 395–97, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980), or one in which the plaintiff lacks standing, *see Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). The present case falls into none of these categories. A court can also be called upon to render an improper "advisory opinion" if it is asked to decide an issue while the case is in a procedural stage at which decision of the issue is unnecessary. *E.g., United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 746 (1961). In this case, any explicit or implicit decision by the Court concerning the scope and applicability of the Neutrali-

demands no special competence or information

ty Act will be reached only because absolutely necessary to resolve the claims plaintiffs have raised on their motion for summary judgment. To the extent such a question is raised by this case, it is presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. *See Flast v. Cohen,* 392 U.S. 83, 95–97, 88 S.Ct. 1942, 1949–51, 20 L.Ed.2d 947 (1968). The decision is not advisory in any sense.

## DECISION ON THE MERITS

Plaintiffs have moved for summary judgment pursuant to Fed.R.Civ.P. 56. No material facts are in dispute. Defendants agree that:

1. Exhibits A and B to plaintiffs' statement of material facts are the documents received from plaintiffs in connection with their request for institution of a preliminary investigation pursuant to the Ethics in Government Act;

2. Exhibit C to plaintiffs' statement of material facts is the letter of March 18, 1983 to plaintiff Ronald V. Dellums from D. Lowell Jensen, Assistant Attorney General, denying plaintiffs' request;

3. No preliminary investigation was undertaken and no recommendation for appointment of an independent counsel was submitted;

4. Paragraph 3 of plaintiffs' statement of material facts contains an accurate reproduction of allegations received from plaintiffs in connection with their request to the Attorney General under the Ethics in Government Act.

This Court must review the Attorney General's determination that the material plaintiffs submitted "does not constitute specific information of a federal offense 'sufficient to constitute grounds to investigate' as required by the Ethics in Government Act as amended on January 3, 1983." Letter of D. Lowell Jensen. Under the Administrative Procedures Act, the Court must decide whether this determination

beyond the reach of the judiciary).

was arbitrary, capricious, an abuse of discretion not in accordance with law, or unsupported by substantial evidence on the record as a whole. 5 U.S.C. § 706(2); *Good Samaritan Hospital, Corvallis v. Mathews*, 609 F.2d 949, 951–52 (9th Cir. 1979).

Section 592(a)(1) of the Ethics in Government Act states that

In determining whether grounds to investigate exist, the Attorney General shall consider—

(A) the degree of specificity of the information received, and

(B) the credibility of the source of the information.

As shown above, this language, read in the light of its legislative history, plainly limits the grounds for a refusal by the Attorney General to investigate to a lack of specificity of the information presented or a lack of credibility of the person presenting the information. Defendants do not claim that the plaintiffs, who presented them with the information, are not credible.[12] The Attorney General's refusal to investigate can be sustained, therefore, only if the allegations presented by plaintiffs were insufficiently specific.

The standard for assessing the specificity of information presented is revealed by the legislative history of the Ethics in Government Act and its amendments. "Specific information" means a complaint more detailed than a "generalized allegation of wrongdoing which contains no specific factual support." S.Rep. No. 170 at 52; 1978 U.S.Code Cong. & Ad.News at 4268. Provided as an example of an insufficiently specific complaint is a letter saying only that a Cabinet member is a "crook." *Id.* However, the Senate Report

suggests that a preliminary investigation would be required upon a report that "a cabinet secretary took a bribe on July 1, 1976 in New Orleans," even if "it can be quickly established that the secretary was in Albany, New York on that day." *Id.* at 55, 1978 U.S.Code Cong. & Ad.News at 4271.

The 1983 amendments to the Ethics in Government Act did not change this standard. The Senate Report to those amendments reiterates that "if a credible source informs the Department of Justice that a named, covered official took money on a given date, in a given place, and provided facts which indicate that it may have been a bribe, this information should trigger a preliminary investigation." S.Rep. No. 496 at 12, 1982 U.S.Code Cong. & Ad.News at 3549.

The information plaintiffs provided the Attorney General was much more than mere "generalized allegations of wrongdoing" without factual support. Plaintiffs gave the Attorney General pages of names, dates, times and places in support of the claim that federal officials sponsored paramilitary expeditions against Nicaragua in violation of the Neutrality Act all as more fully detailed at page 1492, *supra.*

■ The Court finds the Attorney General's conclusion that the information provided by plaintiffs was not "specific information of a federal offense 'sufficient to constitute grounds to investigate'" to be unreasonable and wholly unsupported by the record. Consequently, the Court must set aside the Attorney General's determination and accompanying failure to act as unlawful. 5 U.S.C. § 706(2); *see, e.g., Washington State Farm Bureau v. Marshall*, 625 F.2d 296, 302 (9th Cir.1980). The

---

**12.** Defendants appear to accept, as indeed they must, that no question of the sources' credibility is raised. None of the Attorney General's filings challenge plaintiffs' credibility. The legislative history makes clear that plaintiffs must be considered "credible sources" under any rational application of the statutory criteria. *Compare* S.Rep. No. 170 at 55, 1978 U.S.Code Cong. &

Ad.News at 4271, *with* S.Rep. No. 496 at 11–12, 1982 U.S.Code Cong. & Ad.News at 3547–48. Nothing in the record suggests that complainants here are cranks, mentally ill, motivated by "hate", or have "repeatedly supplied ... allegations which have proved to be groundless." *Cf. id.*

law requires the Court to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1); *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981).

Plaintiffs are entitled to an order requiring the Attorney General to conduct a preliminary investigation. *See F.T.C. v. Anderson,* 631 F.2d 741, 750 (D.C.Cir.1979).

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is granted.

IT IS HEREBY FURTHER ORDERED that defendants' motion to dismiss the complaint is denied.

IT IS HEREBY FURTHER ORDERED that The Attorney General shall conduct a preliminary investigation pursuant to 28 U.S.C. § 592 into the conduct of any person presently covered by the Ethics in Government Act named in the information submitted by plaintiffs relating to violations of the Neutrality Act, 18 U.S.C. § 960, arising out of actions connected to paramilitary expeditions against Nicaragua, as more specifically detailed in the information received from plaintiffs by the Attorney General on January 27, 1983.

IT IS HEREBY FURTHER ORDERED that if the Attorney General does not make the determination described in 28 U.S.C. § 592(b)(1) within ninety days of the date of this order, he shall apply for the appointment of an independent counsel as provided in 28 U.S.C. § 592(c)(1).