**Ronald V. DELLUMS, Eleanor Ginsberg, Myrna Cunningham, Plaintiffs-Appellees,**

**v.**

**William French SMITH, individually and in his official capacity as Attorney General of the United States; D. Lowell Jensen, individually and in his official capacity as Assistant Attorney General, Criminal Division of the United States Department of Justice, Defendants-Appellants.**

No. 84–1525.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1984.

Decided Aug. 21, 1986.

Jules Lobel, University of Pittsburgh Law School, Pittsburgh, Pa., for plaintiffs-appellees.

John Midgley, Robert Adelman, Iris Gomez, Daniel Hoyt Smith, P.S., Seattle, Wash., amicus.

Carolyn Kuhl, John F. Cordes, Leonard Schaitman, Harold J. Krent, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before FAIRCHILD,* FLETCHER and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

This case is one of three lawsuits brought by members of the public in federal district courts seeking to force Attorney General William French Smith to comply with the provisions of the Ethics in Government Act, 28 U.S.C. §§ 591–598 (1982) [Ethics Act]. All three district courts concluded that the Ethics Act imposes mandatory duties upon the Attorney General and found that he had unlawfully failed to perform them. All three courts issued injunctions requiring the Attorney General to comply with the Ethics Act's provisions. *See Banzhaf v. Smith,* 588 F.Supp. 1498 (D.D.C.1984); *Dellums v. Smith,* 573 F.Supp. 1489 (N.D.Cal.1983), *motion to alter judgment denied,* 577 F.Supp. 1449 (N.D.Cal.1984); *Nathan v. Attorney General,* 563 F.Supp. 815 (D.D.C.1983). The

* Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

Court of Appeals for the District of Columbia Circuit has recently reversed two of these decisions. *See Banzhaf v. Smith*, 737 F.2d 1167 (D.C.Cir.1984) [*Banzhaf II*]; *Nathan v. Smith*, 737 F.2d 1069 (D.C.Cir. 1984). We also reverse. Although we agree with plaintiffs that the Ethics Act imposes mandatory duties, we are persuaded by the Attorney General's argument that his failure to discharge these duties is not subject to federal court challenge by private citizens.

## BACKGROUND

Plaintiff Ronald Dellums is a member of Congress who serves on the House Armed Services Committee. Plaintiff Myrna Cunningham is a physician and resident of Nicaragua who was kidnapped and raped, allegedly by United States-supported paramilitary troops. Plaintiff Eleanor Ginsberg resides in Dade County, Florida, where five United States installations conduct training of paramilitary forces.

In January 1983, plaintiffs sent Attorney General Smith a letter containing detailed allegations about United States activities in Nicaragua and against the Nicaraguan government. Plaintiffs' letter contained information indicating that seven high-level federal officials had violated federal criminal laws. Specifically, the letter claimed violations of 18 U.S.C. § 960 (1982), a statute prohibiting the mounting of military expeditions against nations with whom the United States is at peace [the Neutrality Act], of 18 U.S.C. § 956 (1982), a related statute prohibiting conspiracy to destroy the property of a foreign government, and of 18 U.S.C. § 922 (1982), a statute prohibiting unlicensed shipment of firearms. The letter requested the Attorney General to conduct a preliminary investigation under the Ethics Act to determine whether to apply for the appointment of independent counsel to investigate the allegations that President Ronald Reagan, former Secretary of State Alexander Haig, Secretary of State George Shultz, Assistant Secretary of State Thomas Enders, Secretary of Defense Caspar Weinberger, Assistant Secretary of Defense Nestor Sanchez, and Central Intelligence Agency Director William Casey had committed criminal offenses in connection with the Nicaraguan campaign.

In March 1983, the Attorney General responded to plaintiffs' letter but refused their request for a preliminary investigation. Plaintiffs then filed this suit. The district court concluded that, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1982) [APA], plaintiffs had standing to seek review of the Attorney General's refusal to conduct a preliminary investigation. *See Dellums v. Smith*, 573 F.Supp. 1489, 1494–1501 (N.D.Cal.1983). The court rejected the Attorney General's argument that ordering him to conduct a preliminary investigation would unduly interfere with his prosecutorial discretion. The court concluded that section 592 of the Ethics Act requires the Attorney General to undertake a preliminary investigation whenever he receives specific information from a credible source indicating that a high level federal official may have committed a crime, rather than leaving the decision to investigate to the Attorney General's discretion. *Id.* at 1499. In this case, the Attorney General conceded that plaintiffs' information was specific and credible. *Id.* at 1493; *Dellums v. Smith*, 577 F.Supp. 1449, 1450 & n. 1 (N.D.Cal.1984). The district court granted summary judgment for plaintiffs and ordered the Attorney General to conduct a preliminary investigation of plaintiffs' allegations of Neutrality Act violations. 573 F.Supp. at 1505.

The Attorney General then filed a post-judgment motion arguing that plaintiffs' information did not warrant a preliminary investigation, either because the Justice Department had a non-prosecution policy for Neutrality Act violations by federal executive officials or because the Neutrality Act did not apply to paramilitary expeditions authorized by the President. The district court disagreed. The court ruled that a policy of non-prosecution of federal executive officials was not legitimate under the Ethics Act. 577 F.Supp. at 1454. The court interpreted the Act's legislative histo-

ry to permit consideration of non-prosecution policies only to the extent necessary to avoid the danger that government officers would be prosecuted for offenses where private persons would not. *Id.* at 1455. The district court reviewed the language, legislative history, and judicial and executive interpretations of the Neutrality Act and concluded that the available material supported a construction of the Neutrality Act that prohibited even presidentially-authorized paramilitary expeditions mounted against a government with whom the United States was at peace. *Id.* at 1452–54.[1] The court therefore held that the Attorney General could not refuse to conduct an investigation on the ground that his interpretation of the statute exempted presidentially-authorized paramilitary campaigns. The district court reasoned that "[t]o make the Attorney General's opinion on a disputed question of law the ultimate measure of enforcement of the [Ethics] Act would subvert its very purpose." *Id.* at 1452.

The Attorney General filed a timely appeal. Because we find that the district court erred in exercising jurisdiction over this suit, we do not reach the merits of the court's ruling on the Neutrality Act.

## DISCUSSION

In 1978, Congress enacted the relevant portions of the Ethics Act in order to establish "a neutral procedure for resolving the conflict of interest that arises when the Attorney General must decide whether to pursue allegations of wrongdoing leveled against ... [his] close political associates." *Banzhaf II,* 737 F.2d at 1168. *See Special Prosecutor Provisions of Ethics in Government Act of 1978: Hearings Before the Subcomm. on Oversight of Government Management of the Senate Comm.*

*on Governmental Affairs,* 97th Cong., 1st Sess. 1–3 (1981) (statement of Sen. Cohen) [*1981 Senate Hearings*]. As originally enacted, section 591 of the Ethics Act required the Attorney General to conduct a short, preliminary investigation whenever he received specific information that one of nearly 100 federal or campaign officials had violated a federal criminal law. *See id.* at 1–2. If the Attorney General determined that the charges were not wholly unsubstantiated, he was required to apply for the appointment of a special prosecutor to continue the investigation. *See id.* at 8–9 (testimony of former Attorney General Benjamin R. Civiletti).

In 1981, the Justice Department sought repeal of the Ethics Act, arguing that the existence of a mandatory special prosecutor procedure both denigrated the position of Attorney General and raised grave constitutional concerns. *1981 Senate Hearings, supra,* at 92–94 (testimony of Associate Attorney General Rudolph W. Giuliani). Alternatively, the Justice Department suggested amending the Ethics Act to vest sole discretion to appoint or remove a special prosecutor in the Attorney General. *See Ethics in Government Act Amendments of 1982: Hearings on S. 2059 Before the Subcomm. on Oversight of Government Management of the Senate Comm. on Governmental Affairs,* 97th Cong., 2d Sess. 5–7 (1982) (testimony of Associate Attorney General Rudolph W. Giuliani) [*1982 Senate Hearings*].

Congress rejected the Attorney General's proposals, but amended the Ethics Act to narrow the range of federal and campaign officials subject to the special prosecutor provisions and to permit the Attorney General to consider the credibility of the source of specific information before undertaking a preliminary investigation. Pub.L. No.

---

1. *See also United States v. Smith,* 27 F.Cas. 1192, 1228–31 (C.C.N.Y.1806) (No. 16,342); H.R.Rep. No. 100, 39th Cong., 1st Sess. 6–7 (1866); Cong. Globe, 35th Cong., 1st Sess. 217, 461–62 (1858); Cong. Globe, 33d Cong., 1st Sess. 1021–25 (1854); 4 Annals of Cong. 11, 743–44, 752, 754 (1793–94); J. Pratt, *Expansionists of 1812* 113 (1967); A. Sofaer, *War, Foreign Affairs and Con-* *stitutional Power* 315–16 (1976); W. Waciuma, *Intervention in Spanish Florida 1801–1813: A Study in Jeffersonian Foreign Policy* 290–91 (1976). *Cf. United States v. The Three Friends,* 166 U.S. 1, 51–53, 17 S.Ct. 495, 497–98, 41 L.Ed. 897 (1897) (Neutrality Act enacted to secure U.S. compliance with law of nations).

97–409, 96 Stat. 2039 (1982); *see* S.Rep. No. 496, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 3537. The legislative history of the amendments indicates that Congress intended the preliminary investigation to be mandatory unless the information was insufficiently specific or came from an insufficiently credible source. *E.g., id.* at 11–13, 21–22, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 3547–49, 3557–58. The 1982 Amendments also raised the standard for appointment of a special prosecutor from one requiring appointment unless the allegations were wholly unsubstantiated to one requiring appointment unless there were no reasonable grounds to believe further investigation were warranted. *See id.* at 14–15, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 3550–51. Finally, the 1982 Amendments changed the name "special prosecutor" to "independent counsel."

Because the Attorney General has refused in this case to conduct a preliminary investigation of allegations conceded to include specific information from credible sources, our inquiry is a narrow one. We are not concerned with whether plaintiffs' allegations merit the appointment of independent counsel. Rather, we must decide whether the Attorney General's statutory duty to conduct a preliminary investigation may be enforced by this court at the behest of these particular plaintiffs.

The Attorney General argues that plaintiffs lack standing to seek review under the APA and that his refusal to conduct a preliminary investigation is not reviewable at the behest of members of the public. Both issues implicate our jurisdiction, *see Block v. Community Nutrition Institute,* 467 U.S. 340, 353 n. 4, 104 S.Ct. 2450, 2458 n. 4, 81 L.Ed.2d 270 (1984), and analysis of the two issues necessarily overlaps. *Banzhaf II,* 737 F.2d at 1170 n.*.

■ Standing to seek review under the APA requires that plaintiffs establish injury-in-fact to an interest arguably within the zone of interests protected by the Ethics Act. *See Glacier Park Foundation v. Watt,* 663 F.2d 882, 885 (9th Cir.1981). Un-

less plaintiffs can show injury-in-fact, their stake in the dispute amounts to a mere abstract concern, which is insufficient to satisfy Article III case and controversy requirements. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39–40, 96 S.Ct. 1917, 1924–25, 48 L.Ed.2d 450 (1976). Generally, members of the public have "no standing to complain simply that their Government is violating the law." *Allen v. Wright,* 468 U.S. 737, 755, 104 S.Ct. 3315, 3327, 82 L.Ed.2d 556 (1984). Congress may, however, create procedural rights, the invasion of which constitutes injury-in-fact and suffices to support standing. *See, e.g., Alvarez v. Longboy,* 697 F.2d 1333, 1338 (9th Cir. 1983); *Committee for Full Employment v. Blumenthal,* 606 F.2d 1062, 1065 & n. 11 (D.C.Cir.1979); *City of Davis v. Coleman,* 521 F.2d 661, 670–72 (9th Cir.1975).

■ The district court reasoned that the Ethics Act imposed a duty upon the Attorney General to conduct a preliminary investigation upon receipt of specific information from a credible source. In imposing this duty, the court held, Congress created a correlative procedural right, in persons who supply the information, to have their allegations investigated. *See* 573 F.Supp. at 1495–97. This reasoning, however, proves too much. By inferring the creation of procedural rights from the imposition of statutory duties, without more, the district court bypassed entirely the injury-in-fact inquiry. *See Capital Legal Foundation v. Commodity Credit Corp.,* 711 F.2d 253, 258–59 (D.C.Cir.1983). Although our cases have recognized congressionally created procedural rights in members of the public in a variety of circumstances, we have always premised those rights on evidence in the statutory language, purpose or legislative history that Congress intended to create such rights. *See, e.g., Alvarez v. Longboy,* 697 F.2d 1333 (9th Cir.1983).

The language of the Ethics Act is barren of such evidence. Although the statute requires the Attorney General to conduct a preliminary investigation upon receipt of specific information from a credible source,

see 28 U.S.C. § 591(a), it makes no provision for advising complainants of the pendency or outcome of the investigation. Indeed, the statute appears to contemplate that preliminary investigations will occur without any notice to members of the public. *See, e.g.*, 124 Cong.Rec. 36,462 (1978) (remarks of Rep. Wiggins). Section 595(e),[2] in contrast, expressly grants procedural rights to members of congressional judiciary committees, including the right to request the Attorney General to apply for independent counsel and to receive written notification of all actions taken in response to such request. 28 U.S.C. § 595(e).[3]

Plaintiffs argue, however, that congressional intent to accord citizen complainants a procedural right sufficient to support standing may be inferred from the purpose and legislative history of the Ethics Act. Because one purpose of the Ethics Act was to remove from the Attorney General the discretion to refuse to investigate or prosecute high-level government officials involved in criminal activity, plaintiffs argue, it would eviscerate the Act if the Attorney General were permitted simply to refuse to comply with its provisions. Congress therefore envisioned that private citizens supplying specific information from a credible source would trigger a mandatory investigation, and must have meant to accord such citizens a legal right to investigation of their allegations. Plaintiffs point in particular to portions of the Ethics Act's legislative history reflecting a purpose to prevent the Attorney General from circum-

venting the statute. *See, e.g.*, S.Rep. No. 496, *supra*, at 13–14, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 3549–50; *see also* S.Rep. No. 170, 95th Cong., 2d Sess. 6–7, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4216, 4222–23.

In essence, plaintiffs are arguing that, since the legislative history demonstrates that Congress did not intend the Ethics Act to be precatory, it is our obligation to interpret the statute to permit its enforcement at plaintiffs' behest. Plaintiffs have failed to persuade us, however, that the Ethics Act will be wholly unenforceable unless we ascribe to Congress the purpose to confer procedural rights on private citizens.

■ Although Supreme Court cases manifest a strong presumption favoring reviewability under the APA, *Block v. Community Nutrition Institute*, 467 U.S. at 350–51, 104 S.Ct. at 2456–57 (1984); *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975), the general presumption is not controlling where a congressional intent to preclude review at the behest of particular potential litigants is "fairly discernible" in the statutory scheme as a whole or in the statute's legislative history. *Block*, 467 U.S. at 350–51, 104 S.Ct. at 2456–57. The presumption may be overcome by specific language or specific legislative history, reliably indicating intent to preclude review, or by inferences of intent drawn from the statutory scheme as a whole. *Id.* "In particular, at least when a statute provides a detailed mechanism for judicial consideration of par-

---

2. Section 595(e) provides as follows:

A majority of majority party members or a majority of all nonmajority party members of the Committee on the Judiciary of either House of the Congress may request in writing that the Attorney General apply for the appointment of a [sic] independent counsel. Not later than thirty days after the receipt of such a request or not later than fifteen days after the completion of a preliminary investigation of the matter with respect to which the request is made, whichever is later, the Attorney General shall provide written notification of any action the Attorney General has taken in response to such request and, if no application has been made to the division of the court, why such application was not made. Such written notification shall be provided to

the committee on which the persons making the request serve, and shall not be revealed to any third party, except that the committee may, either on its own initiative or upon the request of the Attorney General, make public such portion or portions of such notification as will not in the committee's judgment prejudice the rights of any individual.

3. On April 9, 1984, a majority of the Democratic members of the House Judiciary Committee invoked section 595(e) and requested the Attorney General to seek the appointment of independent counsel to investigate the alleged Neutrality Act violations raised in this suit. On April 26, 1984, the Attorney General refused. The committee members are not parties to this suit.

ticular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id.* at 4699 (citations omitted).

■ Although we do not undertake to decide here whether judicial review is in fact available at the behest of others, we have examined the legislative history of the Ethics Act in the context of the entire statutory scheme, and we conclude that it manifests an intent to preclude review at the behest of members of the public suing in their private capacities. *See Banzhaf II,* 737 F.2d at 1168–70. Because we conclude that Congress intended to preclude review at the behest of private citizens, we necessarily also conclude that Congress did not intend to create procedural rights in private citizens sufficient to support standing to sue. *See id.* at 1170 n.*. Central to our analysis is the Ethics Act's provision for oversight of the Attorney General's compliance with the Ethics Act by members of the congressional judiciary committees, not the public. *See* 8 U.S.C. § 595. Our reading of these oversight provisions persuades us that Congress intended them to be exclusive. *See Banzhaf II,* 737 F.2d at 1168–70.

By creating a mandatory duty to investigate specific, credible allegations of criminal wrongdoing, Congress undoubtedly intended to encourage public participation in the Ethics Act procedures to the extent of reporting any information indicating criminal activity to the Attorney General. That participation, however, appears to be limited to the initial allegation stage. We are persuaded that Congress did not intend thereby to establish procedural rights in the public. It envisioned, rather, that enforcement by members of congressional judiciary committees would be effective in preventing the Attorney General from refusing to obey the law.[4]

Because the plaintiffs, as private citizens, lack standing to challenge the Attorney General's actions, we reverse the district court's ruling and dismiss the case.

REVERSED.

---

**4.** Plaintiffs suggest that the committee oversight provisions are not a meaningful remedy for the Attorney General's unlawful refusal to conduct a preliminary investigation because the authority to request appointment of independent counsel will seldom be invoked. The anticipated

infrequency of such a request does not make the oversight authority meaningless. The Attorney General's flouting of the law he is sworn to uphold is not, in the normal course of things, the sort of event that we would anticipate required frequent correction.