Rebecca A. ALGER, Lisa A. Marini, Joan E. Smuda, The Landmarks Preservation Council of Illinois and The National Trust for Historic Preservation in the United States, Plaintiffs,

v.

CITY OF CHICAGO, ILLINOIS, a municipal corporation, and Commission on Chicago Landmarks, an agency thereof, Defendants.

No. 90 C 02778.

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1990.

---

6. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) may not be the watershed, but it is a convenient reference point.

7. As chance would have it, this Court was invited by the Federal Judicial Center this year to lecture to the latest group of some 30 newly-appointed district judges on the subject of federal habeas corpus. In preparation for that hour-long lecture, it had occasion to revisit the familiar landmarks in the area.

William A. Montgomery, Richard J. Hoskins, Joseph R. Lundy, John H. Ehrlich, Marc C. Modak–Truran, Judith A. Villareal, Barry S. Alberts, Schiff Hardin & Waite, Chicago, Ill., for plaintiffs.

Kelly Welsh, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case involves a challenge to a landmark ordinance enacted by the City of Chicago, Illinois, that precludes the designation of religious buildings as landmarks without the consent of the building's owner. The plaintiffs, Rebecca Alger, Lisa Marini, Joan Smuda, The Landmarks Preservation Council of Illinois (the "Landmarks Council"), and The National Trust for Historic Preservation in the United States (the "National Trust"), have brought this action seeking both a declaration that this ordinance, Chicago, Ill., Municipal Code § 21–69.1 (1987) (hereinafter "Municipal Code § _"), is unconstitutional and an order permanently enjoining its enforcement. The defendants, the City of Chicago and the Commission on Chicago Landmarks (the "Commission" or "Landmark Commission"), have filed a motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, this motion is granted.

### I. Background

#### a. The Chicago Landmarks Ordinance

Like many cities and counties throughout the United States, the City of Chicago has enacted an ordinance aimed at the preservation of buildings, sites and areas that possess unique historical and aesthetic value. This ordinance, Municipal Code §§ 21–62 through 21–95, sets forth procedures for designating an "area, district, place, build-

ing, structure, work of art, or other object" as a "Chicago landmark." If a property is designated pursuant to these procedures, it may not be altered, modified or demolished without the express authority of the Landmark Commission. Municipal Code § 21–77.

The landmark designation procedure is initiated by the Commission, which makes a preliminary decision based on seven statutory criteria, any one of which is sufficient for designation. *Id.* at § 21–66. The Commission thereafter notifies the owner of the property of its decision and requests the owner's consent to landmark designation. *Id.* at § 21–69. If the owner consents, the Commission is free to recommend designation to the City Council. *Id.* at §§ 21–69 and 21–72. The City Council then determines whether to officially designate the property as a Chicago landmark based upon the findings, recommendation and record of the Commission. *Id.* at § 21–73. In its discretion, the City Council may also hold public hearings to assist it in this determination. *Id.*

If the owner refuses to consent to designation, the procedure that follows depends on the nature of the property under consideration. If the property is "owned by a religious organization and is used primarily as a place for the conduct of religious ceremonies," the owner's refusal to consent precludes designation. *Id.* at § 21–69.1. This effectively ends the designation proceedings.

If the property is not a religious organization and is not therefore controlled by § 21–69.1, the Commission holds a public hearing in which it provides "a reasonable opportunity for all interested person to present testimony or evidence" regarding the appropriateness of landmark designation. *Id.* at § 21–71. Additionally, "[a]ny person, organization or other legal entity whose use or enjoyment or whose members' use or enjoyment of the [property] proposed for designation may be injured" by the decision may become a "party" to the proceeding. *Id.* According to the Complaint, the Commission has adopted rules that give "parties" an opportunity for more significant participation in the hearing than those who are only "interested persons." *Id.* Based upon the evidence presented at such a hearing, and the results of its independent efforts, the Commission may recommend designation to the City Council over the objections of the property owner. Thus, unless the property is controlled by § 21–69.1, a property owner's refusal to consent does not preclude the possibility of designation.

#### b. *Factual Background*

Because this is a motion to dismiss, we have assumed that the facts alleged are true and view them in the light most favorable to the plaintiffs. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). On November 1, 1989, the Commission made a preliminary decision that St. Mary's should be designated as a Chicago landmark. The Commission found that the church merited designation due to its unique and impressive architectural style emphasized by its monumental scale, its distinctive and firmly established role as a visual and physical centerpiece of the community, and its value as an example of Chicago's historical and architectural heritage in its imitation of the grand religious cathedrals of Europe.

On November 3, 1989, the Commission sent notice of its decision and a request for consent to St. Mary's owner, Joseph Cardinal Bernardin, the Roman Catholic Archbishop of Chicago. Without stating any reasons, Cardinal Bernardin declined to give consent which, pursuant to § 21–69.1, precluded St. Mary's designation and obviated the necessity of a public hearing. The Commission subsequently withdrew its preliminary determination of landmark eligibility.

Each of the plaintiffs in this case claims an interest in the designation of St. Mary's as a Chicago landmark. The individual plaintiffs, Alger, Marini and Smuda, all live in close proximity to the church and each claims that her "use, enjoyment and aesthetic appreciation of St. Mary's are threatened and adversely affected by the existence and enforcement of § 21–69.1." The

other plaintiffs, the Landmark Council and the National Trust, each have members who live in the so-called "St. Mary's neighborhood" and who are similarly threatened and adversely affected by § 21–69.1.

The plaintiffs seek a declaration that § 21–69.1 is unconstitutional, arguing that it violates the Establishment and Equal Protection Clauses of the Federal and Illinois Constitutions, and that it unlawfully delegates legislative power to religious organizations in violation of the Illinois Constitution. They urge this Court to grant an order permanently enjoining the enforcement of § 21–69.1 on these grounds.

Defendants have filed a motion to dismiss this action contending that (1) plaintiffs lack standing to challenge the constitutionality of § 21–69.1; and (2) § 21–69.1 does not violate either the Establishment or Equal Protection Clause of the Federal Constitution, and that, without these federal question claims, this Court lacks pendant jurisdiction. Because we agree with defendants' contention that plaintiffs lack standing, we need not address the defendants' second ground for dismissal.

## II. Standing

The issue of standing is imbedded in Article III of the Constitution, which limits the jurisdiction of federal courts to actual "cases" or "controversies." This limitation is "founded in a concern about the proper— and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). It relates "to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the power of an unelected, unrepresentative judiciary in our kind of government." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (quoting *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–79 (D.C.Cir.1982), *cert. denied,*

464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983)). This notion is magnified by our strong tradition against deciding constitutional questions unnecessarily where, as in the present case, a court is asked to adjudicate the constitutionality of legislative action. *NUI Corp. v. Kimmelman,* 765 F.2d 399, 403 (3d Cir.1985).

▆ These concerns are reflected in the doctrinal development of standing, which has produced a threefold constitutional inquiry. *Id.* To support standing, a litigant must demonstrate (1) that he has suffered an actual or threatened injury; (2) that is fairly traceable to the challenged conduct; and (3) will likely be redressed by a favorable decision. *Jorman v. Veterans Admin.,* 830 F.2d 1420, 1424 (7th Cir.1987); *City of Evanston v. Regional Transp. Auth.,* 825 F.2d 1121, 1123 (7th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988).

▆ The analysis in this case ends at the first element of this inquiry because the plaintiffs have not alleged a constitutionally sufficient "actual or threatened injury." The plaintiffs argue that either of two injuries is sufficient to meet this requirement of standing. First, they assert that the requirement is met by the threat to their use, enjoyment, and aesthetic appreciation of St. Mary's that is created by the existence and enforcement of § 21–69.1. Second, they argue they are injured because § 21–69.1 denies them the opportunity to take part in a public hearing in which the Landmark Commission would evaluate the public interest in designating St. Mary's as a landmark.[1]

▆ With respect to the plaintiff's first alleged injury, it is clear that harm to aesthetic interests may be sufficient to satisfy the injury-in-fact requirement. *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct.

---

1. Plaintiffs also contend, somewhat half-heartedly, that the National Trust has an independent basis for standing because it is authorized by Congress to bring lawsuits to "preserve for public use historic sites, buildings, and objects of national significance for the benefit of the people of the United States." 16 U.S.C. §§ 461 and

468. This argument must, of course, fail because even if it was Congress's intention to give broad standing to the National Trust, Congress has no power to abrogate the minimum standing requirements of Article III. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

1361, 1366, 31 L.Ed.2d 636 (1972). According to the Supreme Court in *Sierra:*

> [a]esthetic and environmental well-being ... are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.

*Id.* at 734, 92 S.Ct. at 1366. This principle has been reaffirmed by the Supreme Court on several occasions, *see e.g., United States v. SCRAP*, 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973), and recognized by the Seventh Circuit. *See e.g., Alschuler v. Dept. of HUD*, 686 F.2d 472, 476–77 (7th Cir.1982); *South East Lake View Neighbors v. Dept. of HUD*, 685 F.2d 1027, 1034 (7th Cir.1982). It has also been applied specifically to the aesthetic and historical value of buildings. *See e.g., Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23–24 (6th Cir.1980); *Committee to Save the Fox Bldg. v. Birmingham Branch of the Federal Reserve Bank of Atlanta*, 497 F.Supp. 504, 509 (N.D.Ala. 1980); *Weintraub v. Rural Electrification Admin.*, 457 F.Supp. 78, 88 (M.D.Pa.1978); *Save the Courthouse Comm. v. Lynn*, 408 F.Supp. 1323, 1332 (S.D.N.Y.1975).

■ However, the fact that an injury of this nature is judicially cognizable is not sufficient to meet the injury-in-fact requirement under the circumstances of this case. An alleged threat of injury must also be "both real and immediate, not conjectural or hypothetical."[2] *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citations and quotations omitted). Thus, a "plaintiff who challenges a statute must demonstrate a *realistic danger* of sustaining a direct injury as a result of the statute's operation or enforcement." *Pennell v. City of San Jose*, 485 U.S. 1, 8, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)) (emphasis added). If the plaintiff fails to demonstrate such a danger, its alleged threatened injury is not sufficient to confer standing.

The plaintiffs in this case seem to miss this fundamental point. They argue that the "threat of injury" is sufficient; but do not address the likelihood that they will sustain the injury that is the subject of that threat. This is where their argument fails. The plaintiffs will suffer the alleged aesthetic injury only if St. Mary's is altered or changed in a way that deleteriously affects its aesthetic value. Yet, the plaintiffs have not alleged any facts which suggest that this is even a vague likelihood. They do not allege that church officials are presently considering, or have ever considered, the possibility of altering St. Mary's. They merely allege that as a result of § 21–69.1 there is nothing to prevent church officials from doing so. Thus, at most, they allege that there is a *possibility* St. Mary's will *someday* be altered in an injurious way. This simply does not constitute the "real and immediate" threat of injury necessary to confer standing under Article III. *See United Transp. Union v. I.C.C.*, 891 F.2d 908, 912 (D.C.Cir.1989) (claims founded on baseless "predictions of future events (es-

---

**2.** This aspect of standing is analytically intertwined with the question of ripeness, another principle of justiciability. A case is not considered ripe for adjudication unless there is a "threat of significant and immediate impact on the plaintiff." *Kerr–McGee Chemical Corp. v. United States Dept. of Interior*, 709 F.2d 597, 600 (9th Cir.1983); *see also Toilet Goods Ass'n. v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). Thus, a given case may be dismissed because the anticipated injury "is too remote to be ripe for review on one hand, or too remote to constitute the requisite concrete harm to satisfy the injury-in-fact requirement of standing." *Allendale Leasing, Inc. v. Stone*, 614 F.Supp. 1440, 1447 n. 4 (D.C.R.I.1985); *see also*

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978) (anticipated injury sufficient under standing analysis also satisfies ripeness concerns); *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 489 (7th Cir.1988) (anticipated injury insufficient under both standing and ripeness analysis); *Roshan v. Smith*, 615 F.Supp. 901, 904 (D.C.D.C.1985) (where question is "sufficiency versus remoteness of alleged injury, ripeness and standing concerns merge"); 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3531.12 (2d ed. 1984). In the present case, defendants have not raised the question of ripeness and we do not reach it.

622

pecially future actions taken by third parties)" are generally too "speculative" to support standing), *cert. denied*, —— U.S. ——, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990); *cf. Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 489 (7th Cir. 1988) (plaintiff does not have standing to challenge the license suspension and revocation provisions of ordinance where it has never been threatened with such action); *Evans v. City of Chicago*, 689 F.2d 1286, 1299 (7th Cir.1982) (class of tort judgment creditors lacked standing to challenge statutory procedures for payment of judgements because city never invoked procedures or threatened to invoke them); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981) (mining companies lack standing to challenge warrantless search statute absent allegation that statute had been applied or threatened to be applied to them), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *see also Golden v. State B. of Law Examiners*, 614 F.2d 943, 945 (4th Cir.1980) (plaintiff lacks standing to challenge rule requiring state residence as a prerequisite to state bar admission where she has not yet passed the bar examination).

None of the cases that the plaintiffs cite are contrary. While they cite a number of cases that accord standing based on the aesthetic and historical value of a building, none of these cases rest standing on the mere *possibility* of future alteration. Instead, each case involves the imminent demolition of the building or buildings in question. *Neighborhood Dev.*, 632 F.2d at 23 (two of the three buildings in question

were scheduled for demolition and the other had been demolished); *Committee to Save the Fox Building*, 497 F.Supp. at 507 (contract executed with demolition company and permits issued); *Weintraub*, 457 F.Supp. at 82 (demolition had commenced); *Save the Courthouse Comm.*, 408 F.Supp. at 1328–29 (demolition plan approved and contract awarded). In the instant case, on the other hand, plaintiffs have not alleged that St. Mary's is in any greater danger of demolition or alteration than any other building in Chicago, or in the country for that matter. Indeed, it is certainly possible that this contingency will never occur and that, even if it were to occur at some time in the future, that none of the plaintiffs will be in a position to suffer harm at the time. To address the constitutionality of § 21–69.1 under such circumstances, where the anticipated injury is patently remote, would be a gratuitous exercise of federal jurisdiction and well beyond the reasonable limits of Article III. Thus, the plaintiffs' first alleged injury does not satisfy the injury-in-fact requirement of the standing inquiry.[3]

■ The plaintiffs also argue that, even if the alleged possibility of aesthetic injury is insufficient, they meet the injury-in-fact requirement because § 21–69.1 denies their opportunity to participate in a St. Mary's landmark designation hearing. Of course, the plaintiffs are right that because § 21–69.1 precludes St. Mary's designation, it consequently obviates the need to conduct a public hearing on the matter. Accordingly, the plaintiffs are denied the

---

**3.** Even if we found that the possibility of future aesthetic injury was sufficient to meet standing's injury-in-fact requirement, there is some question that plaintiffs could meet the third element of the inquiry: that such injury is "likely to be redressed by a favorable decision" of this Court. *Jorman*, 830 F.2d at 1424. If we were to declare § 21–69.1 unconstitutional, the plaintiff's alleged injury would be redressed only if St. Mary's was designated as a landmark. Designation would presumably redress the plaintiff's injury by eliminating the possibility that St. Mary's will be altered in the future in a way that harms its aesthetic and historical value. *See* Municipal Code § 21–80. However, before St. Mary's could be designated, the Commission would hold a public hearing to consider the

pros and cons of recommending landmark designation over Cardinal Bernardin's objection. *Id.* at § 21–71. Even if the Commission decided to recommend designation, St. Mary's could not be designated unless, upon a review of the Commission's findings, reports and record, the City Council agreed with and affirmed the Commission's recommendation. *Id.* at § 21–73. Thus, there is at least some likelihood that St. Mary's would remain undesignated even if we declared § 21–69.1 unconstitutional. Nevertheless, it is not necessary to determine whether this would preclude satisfaction of the third element of the standing inquiry in light of the fact that the plaintiffs have failed to meet the first requirement.

"reasonable opportunity ... to present testimony or evidence" concerning the appropriateness of designation at a public hearing. Municipal Code § 21–71. This alone, according to the plaintiffs, is sufficient injury to confer standing. We disagree.

The denied opportunity to participate in a designation hearing is insufficient to support standing because it fails to meet the injury-in-fact requirement; but it does not fail for the same reason as the alleged aesthetic injury. It certainly cannot be said the loss of this opportunity is not "real and immediate." The plaintiffs have in fact been denied this opportunity and will continue to be denied this opportunity unless § 21–69.1 is declared unconstitutional. Rather, this alleged injury fails to meet the requirement because it is not sufficiently concrete or "distinct and palpable" to warrant judicial protection. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The question in this regard is whether an alleged injury is "too abstract or otherwise not appropriate to be considered judicially cognizable." *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). Here, the answer is in the affirmative. The denial of an opportunity to participate in a designation hearing merely to express one's views and concerns is not a judicially cognizable injury.

The plaintiffs' vain arguments to the contrary are based on the confusion and misunderstanding of two separate but related standing concepts. First, plaintiffs rely on a line of cases that can be characterized as "lost opportunity cases." 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3531.4 at p. 430–32 (2d ed. 1984). These cases arise where the plaintiff is denied some procedural opportunity which, if afforded, could render some benefit or prevent some harm. Standing in such cases does not rest on the denial of the opportunity itself but instead on the potential harm or anticipated benefit. Accordingly, standing depends on the likelihood of suffering the potential harm or realizing the anticipated benefit. *See Planned Parenthood Ass'n of Chicago v. Kempiners,* 700 F.2d 1115, 1135 (7th Cir.

1983); *Doherty v. Rutgers School of Law–Newark,* 651 F.2d 893, 899 (3d Cir.1981) (although standing to challenge admission policy will be accorded to plaintiff with realistic chance of successful admission but for the challenged policy, it will not be accorded to plaintiff without realistic chance); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3531.4 (2d ed. 1984).

A particularly lucid example of this principle is found in *Planned Parenthood,* upon which the plaintiffs incorrectly rely. In this case, Planned Parenthood Association of Chicago ("Planned Parenthood") challenged the constitutionality of an Illinois statute that authorized the Illinois Department of Health to award grants to nonprofit organizations that provided services relating to problem pregnancies. *Id.* at 1117. However, a provision of that statute precluded grants to organizations that "refer or counsel for abortion." *Id.* Thus, because Planned Parenthood's counseling program included a discussion of abortion, it was absolutely denied the opportunity of "competing freely for the funds." *Id.* at 1119. Although each of the three judges on the panel filed a separate opinion, none of the judges argued that this lost opportunity was itself sufficient to confer standing. Instead, the question with respect to standing was whether, if afforded that opportunity, Planned Parenthood had a sufficient likelihood of obtaining the funds. As stated by Judge Posner:

> Planned Parenthood has standing to challenge this proviso if there is a reasonable probability that striking it down would result in a tangible benefit to Planned Parenthood: namely, receiving money under the program.... [If this] is only a remote possibility, Planned Parenthood's tangible stake in the outcome of this lawsuit is too slight to give it standing.
>
> This much I expect is common ground among the judges of this panel and the disagreement is over whether Planned Parenthood has shown a reasonable

probability that it will obtain funds if the proviso that disqualifies it is invalidated. *Id.* at 1135.

Accordingly, the plaintiffs cannot rely on the rationale of *Planned Parenthood* to support their contention that they have suffered a "distinct and palpable" injury because they were denied the opportunity to participate in a designation hearing. Under the rationale of *Planned Parenthood,* because we have decided that the alleged aesthetic injury is too remote to confer standing, the denial of the opportunity to prevent such harm is also insufficient. To hold to the contrary could expand standing well beyond any rational justification. Any party who is effectively denied a benign procedural opportunity to prevent some harm would have constitutional standing no matter how obscure the likelihood of actually suffering that harm. *See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3531.4 at p. 431 (2d ed. 1984). We are certainly not inclined to hold as such.

■ The second and related standing principle upon which plaintiffs rely raises a closer question, but is equally unavailing. This principle is founded in the concept that the nature of injury that may satisfy the injury-in-fact requirement may be expanded by legislative action. Thus, if the legislature enacts a statute to protect some interest that would otherwise be considered too abstract for protection, its denial may be deemed sufficiently important to confer standing. *See e.g. Havens Realty Corp. v. Coleman,* 455 U.S. 363, 374, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982) (injury is established by violation of "legal right to truthful information about available housing"

created by Congress); *White v. Arlen Realty & Dev. Corp.,* 540 F.2d 645, 648–650 (4th Cir.1975) (injury is established by failure to disclose information regarding department store charge account as required by statute); 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3531.13 (2d ed. 1984). Under this rationale, some courts hold that if a procedural opportunity is created by statute, its denial may constitute injury-in-fact, without regard to the likelihood of a potential substantive injury.[4] *Defenders of Wildlife v. Hodel,* 851 F.2d 1035, 1040–41 (1988); *Fernandez v. Brock,* 840 F.2d 622, 628 (9th Cir.1988); *Dellums v. Smith,* 797 F.2d 817, 821 (9th Cir.1986); *City of Davis v. Coleman,* 521 F.2d 661, 665–66 (9th Cir.1975).

However, this does not mean that a plaintiff may establish standing merely by pointing to some colorable procedural opportunity that was created by legislative action. Instead, the plaintiff must show that the legislature intended to create some procedural "right" worthy of judicial protection and that they are the intended beneficiaries of that "right." *Fernandez,* 840 F.2d at 628; *Dellums,* 797 F.2d at 821. In this case, our interpretation of legislative intent is guided by the Illinois Supreme Court. According to that court, Chicago has granted the opportunity to participate in a designation hearing, pursuant to § 21–71, "not as a legal entitlement but as a tool to assist the municipality in performing its legislative function." *Landmarks Preservation Council v. City of Chicago,* 125 Ill.2d 164, 175, 125 Ill.Dec. 830, 835, 531 N.E.2d 9, 14 (1988). This conclusion is buttressed by the stated purposes of the Landmark Ordinance, one of which is to "[t]o encourage public participation in iden-

**4.** Other courts will not confer standing based on the existence of a procedural injury alone. These courts require "some connection between the alleged procedural injury and a substantive injury that would otherwise confer Article III standing." *United Transp. Union v. I.C.C.,* 891 F.2d 908, 918 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990); *see also State of Alabama v. United States Env't Protection Agency,* 871 F.2d 1548, 1556 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989). This nexus requirement is motivated by a concern that al-

lowing standing to rest solely on relatively abstract procedural rights will lead to unduly relaxed Article III requirements. As the court in *United Transp.* stated, "[w]ithout such a nexus, the procedural injury doctrine could swallow Article III standing requirements." 891 F.2d at 918. The Seventh Circuit has not specifically addressed this issue. However, for the purposes of this opinion, it is unnecessary to resolve the conflicting positions taken by other courts because, even if we assume procedural injury alone is sufficient, plaintiffs have failed to demonstrate standing.

tifying and preserving historical and architectural resources through public hearings on proposed designations...." Municipal Code § 21–62 ¶ 10. Accordingly, it is clear that § 21–71 was not enacted to provide a means of protecting individual aesthetic interests and its invasion does not therefore warrant judicial protection and the invocation of federal jurisdiction.

Were we to accept the contrary view, we would necessarily be advocating an extremely broad view of jurisdictional power. The section of the Landmark Ordinance in question directs the Commission to provide "a reasonable opportunity for *all interested persons* to present testimony or evidence." Municipal Code § 21–71 (emphasis added). Under the plaintiff's reasoning, because every "interested person" is granted the opportunity to participate in the hearing, any person who could qualify as an "interested person" would have standing. Whatever the boundaries of those who are "interested," it is certainly clear that they are well beyond any reasonable Article III rationale. *See Capital Legal Found. v. Commodity Credit Corp.*, 711 F.2d 253, 260 n. 17 (D.C.Cir.1983) (where statute entitles all "interested" persons to comment on agency's rule changes, court doubts standing may rest on a "a bare claim of a right to input in the agency's process"). Thus, the "alleged right to participate in a public hearing for participation's sake" is too slender a reed upon which to rest standing. *Landmarks Preservation*, 125 Ill.2d at 165, 125 Ill.Dec. at 834, 531 N.E.2d at 13. Accordingly, we hold that the denial of this procedural opportunity is not a judicially cognizable injury and therefore is insufficient to meet the injury-in-fact requirement.

Having failed to allege a constitutionally sufficient injury, the plaintiffs cannot maintain this action because they lack standing. Although we do not doubt that plaintiffs are profoundly distressed by the fact that St. Mary's could avoid designation as a landmark due to the operation of § 21–69.1, "the psychological consequence presumably produced by observation of conduct with which one disagrees" is not sufficient to warrant the invocation of federal juris-

diction, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982), nor for that matter is the worthy desire to ensure Chicago's compliance with the Establishment and Equal Protection Clauses of the Constitution. *See id.* at 483–84, 102 S.Ct. at 764.

Conclusion

This Court finds that plaintiffs have failed to allege facts sufficient to maintain standing under Article III. We therefore grant defendants motion to dismiss the Complaint. It is so ordered.