Rebecca A. ALGER, Lisa A. Marini, Joan E. Smuda, the Landmarks Preservation Council of Illinois and the National Trust for Historic Preservation in the United States, Plaintiffs,

v.

CITY OF CHICAGO, ILLINOIS, a Municipal Corporation, and Commission on Chicago Landmarks, an Agency Thereof, Defendants.

No. 90 C 02778.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1990.

William A. Montgomery, Richard J. Hoskins, Joseph R. Lund, John H. Ehrlich, Mark C. Modak–Truran, Judith A. Villareal, Barry S. Alberts, Schiff Hardin & Waite, Chicago, Ill., for plaintiffs.

Bennett Lasko, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On September 19, 1990, we dismissed the plaintiff's complaint in this case for lack of standing. *See Alger v. City of Chicago*, 748 F.Supp. 617 (N.D.Ill.1990). On October 2, 1990, the plaintiffs, Rebecca Alger, Lisa Marini, Joan Smuda, The Landmarks Preservation Council of Illinois, and The National Trust for Historic Preservation in the United States, moved to reopen the judgment and for leave to file an amended complaint. For the reasons discussed below, these motions are denied.

## I. BACKGROUND

The plaintiffs brought their original action on May 15, 1990 seeking both a declaration that Chicago, Ill., Municipal Code § 21–69.1 (1987) (hereinafter "Municipal Code § __" or "§ __") is unconstitutional and an order permanently enjoining its enforcement. Section 21–69.1 gives special status to religious buildings under Chicago's landmark ordinance. Under this ordinance, if any property is designated a "Chicago Landmark," it cannot be altered, modified, or demolished without the express authority of the Commission on Chicago Landmarks (the "Commission" or "Landmark Commission"), a defendant in this case. Municipal Code § 21–77. This building restriction is intended to preserve buildings, sites, and areas that possess unique historical and aesthetic value.

Normally, a property can be designated a landmark without the owner's consent and even over his or her objections. Under § 21–69.1, however, a property that is "owned by a religious organization and used primarily as a place for the conduct of religious ceremonies" cannot be designated a landmark without the owner's express consent. In essence, § 21–69.1 gives owners of religious buildings the ability to "veto" a landmark designation. By avoiding designation, the owner of a religious building avoids the consequent construction restrictions and, thus, can demolish or alter the building without consideration of the public interest.

In a letter dated November 21, 1989, Joseph Cardinal Bernardin, the Roman Catholic Archbishop of Chicago, avoided the designation of St. Mary's when he declined to give his consent to landmark status. The plaintiffs subsequently brought their original action based primarily on the allegation that their interest in the "use, enjoyment and aesthetic appreciation of St. Mary's" was threatened by the operation of § 21–69.1, due to the consequent possibility that St. Mary's could be altered or demolished. They sought a declaration

from this Court that § 21–69.1 is unconstitutional, arguing that it violates the Establishment and Equal Protection Clauses of the Federal and Illinois Constitutions, and that it unlawfully delegates legislative power to religious organizations in violation of the Illinois Constitution.

### a. Original Complaint Dismissed

We dismissed the original complaint for lack of standing because it failed to allege a sufficient "actual or threatened injury." A "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Pennell v. City of San Jose*, 485 U.S. 1, 8, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)). The threat of direct injury must be "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quotations omitted). In their original complaint, the plaintiffs did not allege *any* facts which suggested that there was *any* danger that church officials would alter or demolish St. Mary's. The plaintiffs simply alleged that, due to the effect of § 21–69.1, there was nothing to prevent church officials from doing so. Accordingly, we dismissed the complaint holding that it demonstrated no more than a *"possibility* St. Mary's will *someday* be altered in an injurious way," and did not, therefore, allege "the 'real and immediate' threat of injury necessary to confer standing under Article III." *Alger*, at 621.

### b. Amended Complaint

Having realized the shortcomings of their original complaint, the plaintiffs seek to file an Amended Complaint that sets forth a number of additional facts that they contend demonstrate the danger of St. Mary's ultimate demolition is significantly greater than a mere abstract "possibility." According to the Amended Complaint, St. Mary's was closed in January of 1988 because of "safety reasons due to structural concerns," and it remains closed today. In the letter that Cardinal Bernardin sent refusing consent, he stated that, although the "Archdiocese and members of the parish of St. Mary of the Angels have been working towards a solution of this problem, and some monies have been raised for the purpose of making the church building safe for occupancy, ... there is no way of presently predicting the success of the money raising efforts." Consequently, he stated, although he "personally pray[ed] for the renovation of the church building," he could not give his consent to landmark designation.

In late January 1990, the Archdiocese was offered over $1 million in donations from parishioners, neighbors, and other "restoration supporters" to complete the needed repairs, which it refused to accept stating that it was $150,000 less than the necessary amount. Soon thereafter, it was offered a $150,000 guarantee to make up the difference, which it also refused.

Later, in a letter dated February 2, 1990 to Reverend Edwin Lapinski, St. Mary's pastor, Cardinal Bernardin stated that

> ... the issue is not that of St. Mary of the Angels *Parish*, which *will* continue to serve the people of the community in the great tradition of the Resurrectionist Fathers; it is rather the question of the future of the church building of St. Mary of the Angels. I said in my May 4 letter that if the necessary funds were not received, then difficult decisions would have to be made. I am prepared to make such decisions, within the next few months.

(emphasis in original).

The plaintiffs also contend that the Archdiocese has exhibited a "historic pattern" of demolishing churches that it has previously closed. According to the complaint, the Archdiocese has demolished approximately one third (seventeen of forty-two) of the churches that it has closed since the early 1950's. Finally, and according to the plaintiffs, most importantly, the complaint alleges that the Landmark Commission has concluded that St. Mary's is an "endangered building." Based on this conclusion,

the Commission reviewed the merits of St. Mary's as a Landmark in 1989, even though the building had not been on its original 1989 "work plan."

## II. DISCUSSION

 Although it presents a closer question, the Amended Complaint does not remedy the key deficiency of plaintiffs' first failed attempt to allege standing: the absence of a threat of direct injury that is "both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 103, 103 S.Ct. at 1665. Although, "[f]or the purposes of ruling on a motion to dismiss for want of standing, ... [the trial court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," it need not stretch the allegations beyond their sensible and reasonable implications. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Here, viewed reasonably, the allegations of the Amended Complaint do not amount to more than mere speculation and conjecture that St. Mary's will be altered or demolished. Accordingly, because it does not remedy the defects of the original complaint, we deny plaintiffs' motion for leave to file the Amended Complaint. *See Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1983); *see also* 3 J. Moore *Moore's Federal Practice* ¶ 15.08(4), at 15–80 (1990).

The plaintiffs rely heavily on the fact that the Landmark Commission characterized St. Mary's as an "endangered building" in its landmark analysis report. The plaintiffs argue that this "alone" is sufficient to confer standing contending that

the Commission's conclusion, which suggests a serious threat of demolition, demonstrates that the prospect of the plaintiff's injury is "both real and immediate." We disagree, and find that the allegation is not only insufficient, but also irrelevant. The allegation is conclusory, and conclusory allegations, to be distinguished from well-pleaded facts, are properly ignored in a motion to dismiss for want of standing. *See Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir.1985); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). As is apparent from the excerpt of the Commission's report quoted in the Amended Complaint, its conclusion that St. Mary's is "endangered" is based on facts alleged elsewhere in the Complaint: that St. Mary's is now closed and that fund-raising efforts to reopen it are uncertain. Whether these facts are sufficient to confer standing is a question to be addressed by the Court, not the Landmark Commission, a body with no apparent expertise on such matters. Accordingly, just as this Court would not find standing based on the plaintiffs' simple allegation that "we have standing," it will not find standing based on the plaintiffs' allegation that the Landmark Commission concluded that "St. Mary's is endangered." Indeed, we will disregard the allegation entirely.

The plaintiffs also rely on the fact that the Archdiocese has demolished approximately one third of the churches that it closed in the last four decades. This is little support for the contention that St. Mary's will suffer the same demise. Such a "statistic" offers little indication of the Archdiocese's intentions with respect to the *St. Mary's situation today.*[1] However,

---

1. While past actions are indicative of future actions in many circumstances, they are not indicative in all circumstances. To be indicative there must be some cogent reason to believe that the past actions will be repeated. There is no such reason in this case. The Archdiocese's ultimate decision presumably will be based on a multitude of factors that are unique to St. Mary's as it exists today, including among others: the needs of its parishioners, the current economic climate, the strength of the relevant real estate market, the existence of a willing buyer, the prospect of a profitable sale, the cost of demolition, the feasibility and cost of renova-

tion, and the current financial state of the Archdiocese. These factors are all very specific to St. Mary's now, just as the Archdiocese's past decisions to demolish were specific to those churches at those times. Thus, there is little reason to conclude that because it decided to demolish other churches in the past that it will demolish St. Mary's now. This is simply not a situation where you can clearly predict the future conduct of an organization based on past conduct. Such a situation exists, for instance, where an organization has an active institutional policy, or has some apparent and strong in-

even if we did view this "statistic" as a reliable indicator of the Archdiocese's intentions, it seems to suggest that St. Mary's is relatively safe from harm. According to the complaint, a significant majority (almost two-thirds) of churches that have been closed have *not* been demolished. Presumably, each of these buildings is in its original form and is either still owned by the Archdiocese or has been sold to a third party. Therefore, under the plaintiff's rationale, it seems most likely that St. Mary's will remain intact and the plaintiffs' interests, therefore, are not in any "real and immediate" danger.

The other facts alleged by the plaintiffs do not alter this conclusion. Cardinal Bernardin's statement on February 2, 1990, that he is "prepared" to make "difficult decisions" "within the next few months" regarding the future of St. Mary's, means just what it says and no more: a decision will be made, not that a decision has been made. Whether that decision will be to sell, retain, renovate,[2] alter, or demolish St. Mary's remains to be seen and we cannot presently do more than speculate about the outcome of that decision. The plaintiffs argue on the contrary that, under the circumstances, the "only reasonable inference" that can be drawn from the Cardinal's ominous use of the word "difficult" is that "St. Mary's will soon be destroyed." We disagree. We believe that it is not only unreasonable, but wholly unwarranted to infer that the Cardinal was surreptitiously unveiling a secret intention to destroy the church in the immediate future. *See Rush Presbyterian St. Luke's v. Safeco Ins. Co.*, 712 F.Supp. 1344 (N.D.Ill.1989) (in a motion to dismiss, court need not accept as true "unwarranted inferences"). Thus, we decline plaintiffs' invitation to conjure up a "real and immediate" danger from the Cardinal's innocuous statement.

Stripped to its essentials, the Amended Complaint offers little more than the plaintiff's original complaint: a speculative guess about a decision the Archdiocese will make in the future. The Archdiocese has never announced, or even strongly indicated, its intention with respect to St. Mary's. The plaintiff's are attempting to predict its eventual decision by focusing on the Archdiocese's neutral statements regarding St. Mary's and its earlier decisions, some ancient, regarding other churches. This is simply not enough. Absent the existence of some active institutional policy or similarly reliable basis of prognostication, predictions of future actions to be taken by independent organizations are too speculative to support standing. *See United Transp. Union v. I.C.C.*, 891 F.2d 908, 912 (D.C.Cir.1989) ("predictions of future actions (especially future actions taken by third parties)" are generally too "speculative" to support standing), *cert. denied,* —— U.S. ——, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990); *cf. Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 489 (7th Cir. 1988) (plaintiff does not have standing to challenge the license suspension and revocation provisions of ordinance where it has never been threatened with such action); *Evans v. City of Chicago*, 689 F.2d 1286, 1299 (7th Cir.1982) (class of tort judgment creditors lacked standing to challenge statutory procedures for payment of judgements because city never invoked procedures or threatened to invoke them); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981) (mining companies lack standing to challenge warrantless search statute absent allegation that statute had been applied or threatened to be applied to them), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Accordingly, this Court will not countenance federal jurisdiction based on the plaintiffs' prediction that church officials will one day decide to demolish St. Mary's.[3] However,

---

centive, to act in a particular way. The complaint alleges no such policy or incentive, and it is unlikely one exists.

**2.** The Amended Complaint does not explain why the Archdiocese refused the $150,000 guarantee to supplement the original $1 million donation to renovate St. Mary's. Thus, it is uncertain

whether the Archdiocese has decided not to not renovate the building. This uncertainty is not, however, important to our holding in this case.

**3.** Plaintiffs correctly recognize that, as a practical matter, our holding may deny them standing unless and until the Archdiocese decides to demolish St. Mary's. They argue that they

if such a decision is ever made, or if the Archdiocese ever takes some positive and affirmative steps to demolish or alter St. Mary's, this opinion does not preclude the plaintiffs from seeking relief at such time.

## CONCLUSION

For the foregoing reasons, the court denies plaintiffs' motions to alter the judgment and for leave to file an amended complaint without prejudice. It is so ordered.

should not be required to wait to litigate their claims until St. Mary's is so close to destruction. While we recognize the merits of this argument, the alternative, to base standing on simple guesses and weak hypotheses about an action the Archdiocese might someday take, is far less attractive. Standing in federal court to litigate the constitutionality of legislative action is not a matter of tea leaves and crystal balls. Before a decision is made, the plaintiffs cannot offer a great deal more.